OPINION
{¶ 1} Defendant-appellant Julie Yarnell appeals from the September 14, 2005, Judgment Entry of the Delaware County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Julie Yarnell and appellee Kenneth Yarnell were married on August 25, 1984. Three children were born as issue of such marriage, to wit: Justin (DOB 3/26/86), Brandon (DOB 5/18/89), and Taryn (DOB 4/11/93).
 {¶ 3} On August 21, 2003, appellee filed a complaint for divorce against appellant in the Delaware County Court of Common Pleas, Domestic Relations Division. Thereafter, on September 10, 2003, appellant filed a motion for temporary orders, seeking temporary spousal and child support and temporary custody of the minor children. The Magistrate, via an order filed on November 18, 2003, ordered that the parties enter into a shared parenting plan, but did not order temporary child support because no child support worksheets had been submitted by either party. The Magistrate also declined to order temporary spousal support.
 {¶ 4} Appellant, on June 16, 2004, filed a motion for an order modifying the temporary orders pursuant to Civ.R. 75(N)(2), retroactive to the filing date of appellant's original motion for temporary orders. Appellant, in her motion, stated, in relevant part, as follows:
 {¶ 5} "Temporary orders in this case were filed with this Court on November 18, 2003, which Defendant believes are not at all equitable.
 {¶ 6} "The parties have sold their marital home, and Defendant needs to find other living arrangements. Defendant is requesting that this court order Plaintiff to pay spousal support since there has been a change in circumstances and Defendant has more expenses. Defendant filed a budget with the Court on May 24, 2004."
 {¶ 7} Pursuant to an Amended Magistrate's Order filed on July 29, 2004, appellee was ordered to pay spousal support to appellant in the amount of $1,000.00 per month. No child support was ordered since the parties had failed to submit child support worksheets. As memorialized in a Second Amended Magistrate's Order filed on December 28, 2004, appellant was ordered to pay temporary child support to appellee in the amount of $443.72 per month for the two minor children. The Magistrate, in such order, indicated that the order had an effective date of June 16, 2004, which was the date appellant filed her motion for modification of temporary orders.
 {¶ 8} The matter subsequently came on for trial before the Magistrate on February 16, 2005. At the trial, the parties indicated to the trial court that they had agreed on a shared parenting plan designating appellee as the residential parent, and that the parties' marital home had been sold with each party receiving half of the proceeds ($58,000.00). The parties also indicated to the Magistrate that there were three matters that were contested. These three matters concerned the amount of spousal support that appellee was to pay to appellant, the ownership of annuities, and whether appellant owed money to appellee for medical expenses for the children based on temporary orders.
 {¶ 9} At the trial, appellee testified that he earned $72,698.00 in 2004 from his employment with the Westerville Fire Department and that he has a high school diploma. Appellee presented a monthly budget to the court of $4,612.85. Appellee testified that his income was not sufficient to cover his monthly expenses and that he also paid the children's medical expenses, which were not included in his monthly budget. According to appellee, while appellant agreed to pay approximately $443.00 a month in child support to him, in 2004, he did not receive any child support payments from appellant and had only received one $208.00 payment in 2005. Appellee also testified that appellant took money out of the children's accounts and used it to pay the $2,500.00 retainer fee for her attorney.
 {¶ 10} Testimony also was adduced that appellant had finished college after the two married and that she was attending nursing school. At the trial, the parties stipulated to a report which stated that appellant, who was a stay-at-home mother for most of the marriage, had earning ability of $23,500.00. In 2004, appellant had earned $10,337.80 working as a school bus driver and $3,136.60 working for a church. In 2003, appellant had earned $4,754.50 working for the church. Appellant testified that, at her current job, she earned approximately $12,000.00 a year.
 {¶ 11} Testimony also was adduced that appellant had been living in a romantic relationship with another woman named Jane and did not pay anything towards the mortgage or utilities. Appellant testified that she bartered a couch worth $4,000.00 in exchange for a few months of rent and that, after such time, she would start paying rent to Jane. When questioned, appellant admitted that she had not given Jane any money for rent or utilities or any cash. Appellant also submitted a monthly budget to the court of $3,968.72.
 {¶ 12} Pursuant to a Magistrate's Decision filed on April 7, 2005, the Magistrate recommended that appellee be ordered to pay spousal support to appellant in the amount of $2,000.0 a month for seven (7) years and that appellee be ordered to pay child support in the amount of $443.72 a month, effective June 16, 2004. The Magistrate found the duration of the marriage was from August 25, 1984, until February 16, 2005.
 {¶ 13} Both parties filed objections to the Magistrate's Decision. Appellant, in her objection, argued that the Magistrate erred when she awarded child support with an effective date before the termination date of the marriage. Appellee, in his objections, argued that the appellant should not have been awarded spousal support since she was cohabiting with another person and, in the alternative, that the award of spousal support was too high.
 {¶ 14} As memorialized in a Judgment Entry filed on September 14, 2004, the trial court overruled appellant's objection, but sustained appellee's objections in part, finding that the award of spousal support was too high. The trial court modified the Magistrate's Decision by ordering appellee to pay spousal support to appellant in the amount of $1,000.00 a month for five (5) years.
 {¶ 15} Appellant now raises the following assignments of error on appeal:
 {¶ 16} "I. THE TRIAL COURT ERRED WHEN IT OVERRULED THE MAGISTRATE'S DECISION ORDERING APPELLANT TO PAY CHILD SUPPORT EIGHT MONTHS RETROACTIVE TO THE TERMINATION DATE OF THE MARRIAGE. MAGISTRATE'S DECISION FILED APRIL 7, 2005, AND JUDGMENT ENTRY MODIFYING MAGISTRATE'S DECISION FILED SEPTEMBER 14, 2005.
 {¶ 17} "II. THE TRIAL COURT ERRED WHEN IT REDUCED THE AMOUNT OF SPOUSAL SUPPORT AWARDED TO THE APPELLANT BECAUSE OF HER LIVING ARRANGEMENTS WITH ANOTHER PERSON. JUDGMENT ENTRY MODIFYING MAGISTRATE'S DECISION FILED SEPTEMBER 14, 2005."
 I {¶ 18} Appellant, in her first assignment of error, argues that the Magistrate erred when she awarded child support with an effective date before the termination date of the marriage. Appellant notes that while the Magistrate found that the parties' marriage ended on February 16, 2005, she recommended that appellant be ordered to pay child support in the amount of $443.72 a month, retroactive to June 16, 2004.
 {¶ 19} Child support orders are reviewed for an abuse of the trial court's discretion. Pauly v. Pauly, 80 Ohio St.3d 386,390, 686 N.E.2d 1108, 1997-Ohio-105, citing Booth v. Booth
(1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion constitutes more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 20} An order modifying child support cannot be retroactive beyond the date that a motion for modification of child support is made. Tobens v. Brill (1993), 89 Ohio App. 3d 298, 304,624 N.E.2d 265.
 {¶ 21} In the case sub judice, appellant, on June 16, 2004, filed a motion for an order modifying the existing temporary orders, which did not provide for child support. Appellant requested that the temporary orders be modified due to a change in circumstances, the sale of the marital home. We find that the decision to make child support retroactive to the date appellant filed her motion was not arbitrary, unconscionable or unreasonable. The appellant's motion for modification of temporary orders put the issue of child support on the table. Moreover, the Magistrate, in a Second Amended Magistrate's order filed on December 28, 2004, ordered appellant to pay child support in the amount of $443.72. The second amended Magistrate's order indicated that it had an effective date of June 16, 2004. Appellant never objected to such effective date and, as noted by appellee, did not litigate such issue further at trial.
 {¶ 22} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 23} Appellant, in her second assignment of error, argues that the trial court erred when it reduced the amount of spousal support awarded to appellant from $2,000.00 a month to $1,000.00 a month due to her "living arrangements with another person." Appellant maintains that there was insufficient evidence that she was cohabiting and that, therefore, the trial court erred in reducing spousal support on such basis.
 {¶ 24} A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard.Cherry v. Cherry (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 541 N.E.2d 597. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E2d 1140.
 {¶ 25} R.C. 3105.18(C)(1)(a) thru (n) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support. These factors are:
 {¶ 26} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 27} "(b) The relative earning abilities of the parties;
 {¶ 28} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 29} "(d) The retirement benefits of the parties;
 {¶ 30} "(e) The duration of the marriage;
 {¶ 31} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 32} "(g) The standard of living of the parties established during the marriage;
 {¶ 33} "(h) The relative extent of education of the parties;
 {¶ 34} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 35} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 36} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 37} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 38} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 39} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 40} Recently, in Crissinger v. Crissinger, 2006 WL 389641, 2006-Ohio-754, the Seventh District Court of Appeals addressed the issue of cohabitation and its effect on spousal support as follows:
 {¶ 41} "Regarding cohabitation as a factor in determining whether to award spousal support, this court has stated:
 {¶ 42} "A finding of cohabitation can have a direct impact on a spousal support award. Trial courts have the power to terminate or reduce an award of spousal support based on cohabitation.Moell v. Moell (1994), 98 Ohio App.3d 748, 649 N.E.2d 880. While R.C. 3105.18(C) lists a number of factors for a trial court to consider when determining spousal support, cohabitation is not expressly listed as a factor. However, R.C. 3105.18(C)(1)(n) states that any other factor that the trial court expressly finds to be relevant and equitable can be used to determine spousal support." Id. at paragraph 12.[1]
 {¶ 43} Whether or not a particular living arrangement rises to the level of lifestyle known as "cohabitation" is a factual question to be initially determined by the trial court.Dickerson v. Dickerson (1993), 87 Ohio App.3d 848, 851,623 N.E.2d 237, 239. As noted by the court in Moell supra.: "Many factors may be considered in deciding whether cohabitation exists in a particular set of facts. We previously addressed the issue of cohabitation in Dickerson v. Dickerson, supra. In that case, we noted that "cohabitation" describes an issue of lifestyle, not a housing arrangement. Dickerson, supra, 87 Ohio App.3d at 850,623 N.E.2d at 239. Further, when considering the evidence, the trial court should look to three principal factors. These factors are `(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses.' Id. at fn. 2, citing Birthelmerv. Birthelmer (July 15, 1983), Lucas App. No. L-83-046, 1983 WL 6869." Id at 752.
 {¶ 44} In the case sub judice, testimony was adduced at the trial before the Magistrate that appellant was living in a romantic relationship with another woman, Jane, at the time of the trial and that appellant was not paying anything towards the mortgage or the utilities in the home in which she had been residing with Jane since April of 2004. When questioned about the issue of rent, appellant testified that she traded a $4,000.00 couch in exchange for a few months of rent and that she expected to begin paying rent to Jane, although she admitted that they had no written rental agreement. Appellant also testified that she had not given Jane any money and that Jane had paid for all the gas needed for a trip to Colorado.
 {¶ 45} Based on the foregoing, we find that the trial court did not abuse its discretion in reducing the amount of spousal support from $2,000.00 a month to $1,000.00 a month. There was evidence before the trial court that appellant was cohabitating with Jane and that appellant's need for spousal support was reduced due to support that appellant received from Jane.
 {¶ 46} Appellant's second assignment of error is, therefore, overruled.
 {¶ 47} Accordingly, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division is affirmed.
Edwards, J. Hoffman, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division is affirmed. Costs assessed to appellant.
[1] We cite this decision only for the proposition that spousal support can be terminated or reduced if the economic circumstances of cohabitation should so warrant a reduction or termination.