[Cite as *Pekarik v. Otto*, 2020-Ohio-1197.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

AMY PEKARIK

    Appellee

v.

STEPHEN C. OTTO

    Appellant

C.A. No.     18CA0068-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    10DR0591

DECISION AND JOURNAL ENTRY

Dated: March 31, 2020

TEODOSIO, Presiding Judge.

{¶1}    Stephen C. Otto appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, overruling his objections to the magistrate's decision.  We affirm.

I.

{¶2}    In 2010, Amy M. Otto filed a complaint for divorce against her then husband, Stephen C. Otto, and in August 2012, an agreed judgment entry of divorce was entered, along with a separation and property settlement agreement that provided for spousal support.  Included in that agreement was a provision establishing that the trial court would have jurisdiction to review spousal support to determine if modification or termination was warranted due to a substantial change of circumstances.  The agreement further provided that a substantial change of circumstances included "[t]he cohabitation of [Ms. Otto] with an unrelated male tantamount to marriage as defined by Ohio statutory and/or case law."

{¶3} In October 2016, Mr. Otto filed a motion to modify his spousal support obligation. At the hearing on the motion, Mr. Otto raised several arguments as to substantial changes in circumstances, including the alleged cohabitation of Ms. Otto with Tom D'Agostino. The magistrate issued a decision denying the motion, with the trial court entering judgment to the same effect. Mr. Otto subsequently filed objections to the magistrate's decision, which were overruled by the trial court on July 10, 2018. Mr. Otto now appeals, raising three assignments of error.

II.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ABUSED ITS DISCRETION BY MAKING FACTUAL FINDINGS AND LEGAL CONCLUSIONS ARBITRARILY AND CAPRICIOUSLY.

ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN FAILING TO FIND THE APPELLEE AND HER PARAMORE [sic] COHABITING AKIN TO MARRIAGE WHEN AS DEFINED BY THE OHIO LAW THEY SIGNIFICANTLY "SHARED LIVING EXPENSES."

{¶4} In his first assignment of error, Mr. Otto argues the trial court erred because it arbitrarily and capriciously found that Mr. Otto failed to present evidence of Ms. Otto's cohabitation with an unrelated male tantamount to marriage sufficient to justify termination of spousal support. In his second assignment of error, Mr. Otto argues the trial court erred in failing to make a finding of cohabitation despite proof that Ms. Otto and Mr. D'Agostino shared living expenses. He contends that such a finding would have required the trial court to terminate his spousal support obligation. Because these arguments are inextricably linked, we consider them together.

{¶5} In his merit brief to this Court, Mr. Otto states that the divorce decree provides that "spousal support shall terminate upon Husband's or Wife's death, remarriage, or cohabitation."

That is not accurate. Rather, the divorce decree states that "spousal support shall be terminated upon the death of the Husband, the death of the Wife, the remarriage of Wife, or 102 months after its commencement date whichever event occurs first in time." Cohabitation is addressed in a separate section of the divorce decree that sets forth events that are considered substantial changes in circumstances, which would give the trial court jurisdiction to review the spousal-support award to determine if a modification or termination of the award is warranted. Cohabitation, therefore, is not an event that would automatically trigger the termination of the spousal-support award under the terms of the divorce decree.

{¶6} Notwithstanding the foregoing, a review of Mr. Otto's objections to the magistrate's decision indicates that he primarily argued that Ms. Otto's alleged cohabitation with Mr. D'Agostino should have resulted in an automatic termination of his spousal-support obligation. He makes the same argument on appeal, asserting that Ms. Otto's alleged cohabitation with Mr. D'Agostino "requir[ed] the court to terminate [his] spousal support obligation." While Mr. Otto's arguments on appeal are not entirely clear, to the extent they can be construed as challenging the trial court's refusal to automatically terminate his spousal-support obligation based upon Ms. Otto's alleged cohabitation with Mr. D'Agostino, we reject those arguments based upon the terms of the divorce decree.

{¶7} Mr. Otto's first and second assignments of error are overruled.

ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN FAILING TO MODIFY SPOUSAL SUPPORT.

{¶8} In the third assignment of error, Mr. Otto argues the trial court erred in failing to modify spousal support despite Ms. Otto engaging in cohabitation that impacted her economic situation. We disagree.

{¶9} Generally, "the decision to adopt, reject, or modify a magistrate's decision lies within the discretion of the trial court and should not be reversed on appeal absent an abuse of discretion." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. In the context of a condition of a divorce decree, the question of what constitutes cohabitation must be determined on a case-by-case basis. *Austin v. Austin*, 170 Ohio App.3d 132, 2007-Ohio-676, ¶ 6 (9th Dist.). "This [C]ourt will not reverse the lower court's determination regarding cohabitation if it is supported by some competent, credible evidence, nor will we substitute our judgment for that determination." *Id.*

{¶10} "'Cohabitation,' when used in a divorce decree as a condition for termination of spousal support, is used as a substitute for 'remarriage.'" *Jenkins v. Jenkins*, 9th Dist. Lorain No. 08CA009324, 2009–Ohio–75, ¶ 6, quoting *Gatto v. Gatto*, 9th Dist. Summit No. 17121, 1995 WL 434403, *1 (July 19, 1995). "In other words, cohabitation as a condition for the termination of spousal support is 'designed to preclude an ex-spouse from eluding termination of spousal support as a consequence of remarriage, while obtaining the financial benefits thereof, by refusing to sanctify a meretricious relationship through a marriage ceremony.'" *Hartman v. Hartman*, 9th Dist. Summit No. 22303, 2005-Ohio-4663, ¶ 15, quoting *Gatto* at *1. "'Cohabitation' is a term describing a lifestyle, not simply a housing arrangement." *Jenkins* at ¶ 7. "The determinative

issue is whether the cohabitant has 'assumed obligations equivalent to those arising from a ceremonial marriage.'" *Id.*, quoting *Taylor v. Taylor*, 11 Ohio App.3d 279, 280 (1st Dist.1983).

{¶11} "[W]hen considering the issue of cohabitation, the trial court should look to three principal factors: '(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses.'" *In re Dissolution of Marriage of Briggs*, 129 Ohio App.3d 346, 348-349 (9th Dist.1998), quoting *Moell v. Moell*, 98 Ohio App.3d 748, 752 (6th Dist.1994). "[T]he trial court may consider other relevant criteria, including the behavior and intent of the parties." *Id*. "This Court has further adopted the view that 'without a showing of financial support, merely living with an unrelated member of the opposite sex is insufficient, in and of itself, to require termination of spousal support.'" *Hartman* at ¶ 16, quoting *Briggs* at 349. "A finding of cohabitation requires more than evidence that the former spouse is living with another with whom she has sexual relations." *Id*.

{¶12} In its judgment entry overruling Mr. Otto's objections to the magistrate's decision, the trial court noted that the parties did not dispute that Ms. Otto and Mr. D'Agostino lived together for a sustained duration of approximately eighteen months. The trial court therefore indicated that the determinative issue was whether Ms. Otto and Mr. D'Agostino shared expenses with respect to financing and day-to-day incidental expenses, ultimately concluding that Mr. Otto had failed to prove that Ms. Otto was cohabitating with an unrelated male in a relationship tantamount to marriage.

{¶13} The trial court's order set forth testimony by Mr. Otto that he had reviewed Ms. Otto's bank statements dating from December 2014 to April 2017, and had determined that $52,158.98 of her deposits were not attributable to her employment income or spousal support.

The trial court noted that although Mr. Otto was unable to account for the source of the additional deposits, he surmised they were contributed by Mr. D'Agostino.

{¶14} Ms. Otto testified that Mr. D'Agostino lived with her from September 2013 through August 2015. She testified that he was a self-employed contractor, and that he would regularly travel to Pennsylvania on weekends. Consequently, he would give Ms. Otto money to pay his employees when he was out of town, and she deposited and withdrew that money from her bank account. Ms. Otto further testified that Mr. D'Agostino "gave [her] money towards [her] bills sometimes" and that he gave her "some money when he felt like it * * * towards expenses, a couple hundred dollars here and there * * *." Ms. Otto testified that they did not have a joint account together; that he did not pay any of the utilities, medical bills, or car insurance and repairs; and that she hired someone to cut the lawn. She also stated that she did not pay any of Mr. D'Agostino's bills.

{¶15} Ms. Otto eventually discovered that Mr. D'Agostino was married and had been travelling to see his children in Pennsylvania, and in August 2015 she "threw him out" of her home as a result. She testified that consequently, there were no more deposits of Mr. D'Agostino's money into her account after August or September of 2015. In accounting for the additional money deposited into her account after September 2015, Ms. Otto testified that she had received money from her parents and had taken out a line of credit against her home mortgage which she used to pay her medical bills and her daughter's wedding expenses.

{¶16} The trial court found that even though Ms. Otto had admitted that Mr. D'Agostino had given her money on occasion, Mr. Otto had failed to prove that the two had "shared expenses with respect to financing and day-to-day incidental expenses, and further failed to prove that Mr. D'Agostino had assumed obligations equivalent to those arising from ceremonial marriage * * *."

In overruling Mr. Otto's objections to the magistrate's decision, the trial court went on to conclude that Mr. Otto had "failed to prove that [Ms. Otto] was cohabitating with an unrelated male in a relationship tantamount to marriage."

{¶17} Although the trial court is accurate in stating that Mr. Otto could only surmise that Mr. D'Agostino was the source of the unaccounted-for deposits in Ms. Otto's bank account, Ms. Otto's own testimony indicated that Mr. D'Agostino had given her money for expenses on some occasions. However, as we have stated, the issue of cohabitation must be decided on a case-by-case basis. *Austin* at ¶ 6. Moreover, we will not substitute our judgment for that of the trial court where its decision is supported by some competent, credible evidence. *Id.*

{¶18} We note that although there are three *principal* factors that the trial court should look to in deciding the issue of cohabitation, it is not restricted to those factors alone, and may consider other relevant criteria. *In re Dissolution of the Marriage of Briggs*, 129 Ohio App.3d 346, 349 (9th Dist.1998). We cannot simply conclude that because Mr. D'Agostino had occasionally given her money for expenses, a finding of cohabitation must necessarily follow. Notwithstanding her admission of receiving money from Mr. D'Agostino, the testimony of Ms. Otto provides some competent, credible evidence in support of the trial court's determination. We further note that except for Ms. Otto's own testimony, there is no evidence offering an explanation for the unaccounted-for bank deposits referred to by Mr. Otto.

{¶19} Accordingly, we conclude the trial court did not abuse its discretion in overruling Mr. Otto's objections to the magistrate's decision. Mr. Otto's third assignment of error is overruled.

III.

**{¶20}** Mr. Otto's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Domestic Relations Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

STEPHEN C. OTTO, pro se, Appellant.

DEAN COLOVAS, Attorney at Law, for Appellee.